**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION (DETROIT)**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - :
                                                                     :
COACH, INC. and COACH SERVICES, INC.,        :
                                                                     :
               Plaintiffs,        :
                                                                     :
           - against -        :        **Case No. 2:10-cv-12813-RHC-RSW**
                                                                     :
D & N CLOTHING, INC. and DANY BAJOCKA     :
d/b/a "'D' CLOTHING,"        :
                                                                     :
            Defendants.        :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -


**PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT ON THE ISSUE OF
LIABILITY AND OPPOSITION TO DEFENSE SUMMARY JUDGMENT MOTION**


       Plaintiffs, by counsel, hereby submit their motion for Partial Summary Judgment on the

Issue of Liability (hereinafter "Motion"), and Opposition to the Defendants' Summary Judgment

Motion, and in support of this Motion Plaintiffs show the Court as follows.


       1.     There is no genuine dispute regarding any material facts in connection with the

Plaintiffs' claim for liability on the part of Defendants.


       2.     Plaintiffs are entitled to judgment as a matter of law based upon the undisputed

facts in this action, on the issue of liability, as set forth in Plaintiffs' Brief and in the admissible

evidence designated for this Court.

3.      Plaintiffs' statement of material facts not in dispute, their citation to legal authority and their citation to designated and admissible summary judgment evidence are contained in the contemporaneously filed Brief supporting this Motion.  The Plaintiffs' summary judgment exhibits/designated evidence are also being filed, as attachments to such Brief.

4.      The materials being submitted by Plaintiffs at this time not only support the entry of partial summary judgment in favor of Plaintiffs, but also establish why Defendants' own summary judgment motion against the Plaintiffs should be denied.

WHEREFORE, Plaintiffs respectfully request that this Motion be granted and that the Court find in Plaintiffs' favor on the issue of liability, and furthermore deny Defendants' own motion for summary judgment which was based upon purported lack of evidence to support Plaintiffs' claims.  Plaintiffs furthermore ask for any other just and proper relief in the premises.

Respectfully submitted,

GONZALEZ SAGGIO & HARLAN, LLP
(Legal Counsel for Plaintiffs)

By:   /s/ *Alejandro Valle*
        One of Its Attorneys

Alejandro Valle
Gonzalez Saggio & Harlan, LLP
135 N. Pennsylvania Street, Ste. 1740
Indianapolis, Indiana  46204
Telephone: (317) 686-9800
Facsimile: (317) 686-9821
Email: vallea@gshllp.com

**LEGAL COUNSEL FOR PLAINTIFFS**

2

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION (DETROIT)**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - :
                                                                      :
COACH, INC. and COACH SERVICES, INC.,            :
                                                                      :
     Plaintiffs,            :
                                                                      :
    - against -            :  **Case No. 2:10-cv-12813-RHC-RSW**
                                                                      :
D & N CLOTHING, INC. and DANY BAJOCKA   :
d/b/a "'D' CLOTHING,"            :
                                                                      :
     Defendants.            :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -


**PLAINTIFFS' BRIEF SUPPORTING THEIR MOTION FOR PARTIAL SUMMARY
JUDGMENT ON THE ISSUE OF LIABILITY, AND OPPOSITION TO DEFENSE
MOTION FOR SUMMARY JUDGMENT**


   Plaintiffs, by counsel, have submitted their motion for partial summary judgment

(hereafter, "Motion"), and Opposition to Defendants' summary judgment motion.  In support of

their Motion, and their Opposition, Plaintiffs show the Court as follows.


**I.   INTRODUCTION**

   An illicit industry exists in the United States involving the unlawful importation,

distribution, offer for sale and sale of merchandise bearing counterfeits and/or infringing

imitations of the trademarks and names of legitimate manufacturers and distributors.  This

counterfeiting industry has often targeted Plaintiff Coach, Inc., and its family of marks, including

Plaintiff's famous Coach Op Art Design, Coach Est. 1941 Stylized Design, Coach Leatherware

Est. 1941 Design and Coach Signature C Design (see below).  Such counterfeiting irreparably

injures Coach, and the public.  For instance, consumers believe they are purchasing authorized

Coach products when in fact they are buying substandard counterfeit products.  When these

infringing products prematurely break or fade, consumers question the quality of Coach's

products.  Furthermore, these infringing products dilute the value of Coach's Marks.

Defendants Dany Bajocka and D & N Clothing, Inc. d/b/a "D Clothing" (collectively

"Defendants") have introduced into the stream of commerce handbags, wallets, shoes, hats and

scarves bearing marks identical and/or confusingly similar to Coach's federally registered

trademarks.  There is, based upon Defendants' goods being counterfeits, an inherent likelihood

of confusion between the items that were offered for sale and/or sold by Defendants and Coach's

authentic goods.  Thus, summary judgment on the issue of liability for trademark infringement

against Defendants is appropriate.


## II.    STATEMENT OF UNDISPUTED MATERIAL FACTS

### A.    Coach's Trademarks

Coach was founded more than sixty years ago as a family-run workshop in a Manhattan

loft.  Declaration of Tiffany Walden (hereinafter "Walden Decl."), ¶3.  Since that time, Coach

has been engaged in the manufacture, marketing, and sale of fine leather and mixed material

products including handbags, wallets, travel cases, briefcases, planners and diaries, leather

goods, watches, eyewear, footwear, apparel, and accessories.  *Id.*  Coach Services, Inc., Coach,

Inc.'s wholly owned subsidiary (hereinafter collectively "Coach"), is the worldwide owner of the

trademark "COACH" and various composite trademarks and assorted design components

("Coach Marks").  *Id.* at ¶4.

4

Amongst the many Coach Marks, some of the most well known and recognized marks are Coach's Coach Op Art Design, Coach Est. 1941 Stylized Design, Coach Leatherware Est. 1941 Design and Coach Signature C Design ("Coach Designs"); see below (in order).



*Id.* at ¶5.

Coach has expended substantial time, money, and other resources in developing, advertising and otherwise promoting the Coach Marks, including these Coach Designs. *Id.* at ¶6. Coach spends millions of dollars annually in advertising, marketing and promotional efforts. *Id.*

Coach has achieved sales volumes of over three billion dollars annually from goods bearing the Coach Marks, including these Coach Designs. *Id.* at ¶7. As such, these Coach Designs and the goodwill associated therewith are valuable assets of Coach. *Id.* Coach and its predecessors have expended over a hundred million dollars in advertising, promoting, and marketing goods featuring the Coach Designs. *Id.* at ¶8. Due to Coach's long use, extensive sales, and significant advertising and promotional activities, the Coach Designs have achieved widespread acceptance and recognition among the consuming public and the trade throughout the United States. *Id.* at ¶9. The arbitrary and distinctive Coach Designs and other Coach Marks serve to identify Coach as the source/origin of the goods on which they appear. *Id.* at ¶10.

### B.    Defendants' Infringement of the Coach Marks

In 2010, Defendants operated a store known as "D Clothing" at 14341 Livernois Avenue in Detroit, Michigan. Affidavit of Darryl Henry (hereinafter "Henry Aff.), ¶3 & Ex. 1; Defendants' Answers to Interrogatories and Requests for Production of Documents (hereinafter, "Discovery Responses"), Request No. 12 & produced Business Entity Information; Deposition

of Dany Bajocka (hereinafter "Bajocka Dep."), pp.20:2-8, 24:8-26:20, 27:16-28:3 & Ex. 2;

Deposition of Nada Mikha (hereinafter Mikha Dep.), pp.13:19-24, 18:21-20:17 & Ex. 2.  This

store was, in April 2010, owned and operated by Dany Bajocka and/or D & N Clothing, Inc.  *Id.*;

*see also* Bajocka Dep., pp.46:6-15.  This store specialized in the sale of retail goods, including

handbags and other accessories, to retail customers.  Bajocka Dep., pp.41:14-43:9; Mikha Dep.,

pp.29:17-30:21.  "D Clothing" was one of three retail stores owned and operated by Defendants

at the time.  Bajocka Dep., pp.13:22-15:15, 16:18-20, 20:2-8, 23:2-21.

In 2010, Defendants sold and offered for sale at the D Clothing store location on

Livernois Avenue various products ("Infringing Products") bearing marks which imitated the

appearance of the Coach Designs used on authentic Coach products.  Henry Aff., ¶¶3-8 & Exs.

1-2.  In April 2010, after Coach's investigator, Recon Management Group LLC ("Recon"),

conducted an investigation at D Clothing with regard to the sale and distribution of counterfeit

Coach products, Coach confirmed that Infringing Products were being offered for sale and sold

at this store by Defendants and Defendants' employees. *Id.*; *see also* Walden Decl., ¶¶12-17.

Coach's investigator purchased an exemplar of such products, a true and correct image of which

is copied below (on the left, next to a true and correct image of an authentic Coach handbag, on

the right).  *Id.*



Infringing Product
(from "D Clothing" store)



Madison Op Art Sabrina Satchel
Style # 12947; MSRP: $298.00

Consequently, on or about April 13, 2010, the Detroit Police conducted a seizure of counterfeit merchandise at the D Clothing store, including with respect to counterfeit Coach products being offered for sale by Defendants at that time.  Henry Aff., ¶¶3-11 & Exs. 1-2; Bajocka Dep., pp.21:23-11, 33:17-25, 36:14-38:5; Mikha Dep., pp.17:11-22.  A total of 132 purported Coach items, depicting counterfeit Coach marks like on the item purchased previously (see above, and additional images below), were seized on April 13, 2010, including:  25 wallets; 25 pairs of shoes; 27 hats; 30 scarves; and 25 handbags, all depicting counterfeit Coach Marks, including the Coach Designs found in the images copied herein.  Henry Aff., ¶¶3-11 & Exs. 1-2.





Through discovery in this action, Coach has learned that Defendants obtained the Infringing Products from a variety of sources, including Young's Fashions, Lee Fashion, www.wholesalefashion.com, www.squarefashion.com, and a "[c]ouple or three guys, they used to bring me stuff, you know."  Discovery Responses, Interrogatory No. 16; Bajocka Dep., pp.51:12-53:6.  These "guys" included "Hussin," and "Ahmed," who had a van and dropped off merchandise and was paid with cash and checks.  Bajocka Dep., pp.53:7-54:12.  Another source was an individual named "Adna," and his associate "Hassan, Gussen," from New York, who would deliver products by UPS.  *Id.* at pp.80:19-82:18.  Dany Bajocka, President, owner and operator of D & N Clothing, Inc. and "D Clothing," was personally involved in ordering products for sale from these sources, along with one of his employees, "Rubin."  *Id.*; *see also id.* at pp. 70:1-18; Discovery Responses, Interrogatory No. 12 (listing part-time employee "Ruben").

Mr. Bajocka admits that he was in the store at least once every day, and that displays of products including displays of handbags at D Clothing were adjusted as often as weekly or every ten days.  Bajocka Dep., pp.68:18-69:18, 74:8-75:17.  Mr. Bajocka admits in his Interrogatory Responses for this action that he was involved with selling products "just like Coach, but it was not Coach."  Discovery Responses, Interrogatory No. 16(d).  (He also admits selling fake "Gucci" or "Cugi" [sic.] – *i.e.*, "COOGI" – items which were not actually authentic.  Bajocka Dep., pp.75:18-77:16; *see also* Henry Dep., ¶3 & Ex. 1.)   He admits that, before April 2010, there had been another seizure of alleged counterfeit merchandise by law enforcement at the D Clothing store, although he states that fake Coach merchandise was not seized during that prior raid.  *Id.*; *see also* Henry Dep., ¶3 & Ex. 1; *see also* Bajocka Dep., pp.21:23-23:1.  The merchandise seized in April 2010, however, clearly included fake purported Coach products.  Henry Aff., ¶¶3-8 & Exs. 1-2; Walden Decl., ¶¶12-17.

Dany Bojocka kept all profits from the sale activity at his D Clothing store.  Bajocka Dep., 46:6-15.  Furthermore, all employees of the store, including "Rubin" or "Ruben," were hired by Ms. Bajocka.  Bajocka Dep., p.70:1-8; Mikha Dep., p.30:16-21; Discovery Responses, Interrgatory No. 12 (identifying Defendants' employees, including "Ruben").

## III.   LEGAL ARGUMENT

### A.   Standard of Review for a Summary Judgment Motion

The summary judgment procedure is well established under Fed. R. Civ. P. 56(c), and case law interpreting and applying that Rule.  Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed.R.Civ.P. 56(c).  The United States Supreme Court has observed that summary judgment and summary adjudication have proven a beneficial approach to reduce the burden on our federal court system.  See *Celotex Corp. v. Catreft*, 477 U.S. 317, 327 (1986).

Once the initial burden on the moving party of setting forth the basis for a summary judgment motion is satisfied, the nonmoving party may not rest on mere allegations or denials in the pleadings but must "come forth with 'specific facts' showing that there is a genuine issue for trial."  *Matsushita Elec. Indust. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Pursuant to Rule 56, an interlocutory summary judgment order may be entered on liability alone, even if there is a genuine issue with regard to the amount of damages.  Fed.R.Civ.P. 56(d)(2).  Indeed, because the present Motion is confined to the question of liability, Coach does not seek herein to establish the full range of trademarks that were the

subject of infringement or the various combinations of counterfeit marks that appeared on
different types of counterfeit merchandise, factors that will be relevant in the damages context.
Instead, the present Motion is confined to the question of whether Defendants' counterfeiting
activity at the D Clothing store in question renders Defendants liable to Plaintiffs.

      **B.**      **Coach is Entitled to Summary Judgment as to the Issue of Liability for Trademark Infringement against Defendants**

      In order to succeed on a trademark infringement claim, a plaintiff must establish: 1) that
it has a valid, protectable trademark, and 2) Defendants subsequently and without authorization
used a similar mark likely to cause consumer confusion, deception or mistake. *See., e.g.*,
*Brookfield Communications v. West Coast Entertainment*, 174 F.3d 1036, 1046 (9th Cir. 1999).

      **1.**      **Validity of the Coach Marks**

      Coach has federal registrations for all the marks which it seeks to protect in this matter.
Walden Decl., ¶¶ 5 – 7.  The federal registration of a trademark with the U.S. Patent and
Trademark Office constitutes "prima facie evidence of the validity of the registered mark,
ownership of the mark and of the registrant's exclusive right to use the registered mark."  15
U.S.C. §§ 1057(b), 1115(a); *Brookfield*, 174 F.3d at 1046-47.  Coach Services, Inc., the wholly-
owned subsidiary of Coach, Inc., is the owner of all the registrations for the Coach Designs.
Walden Decl., ¶¶ 4 – 7.

      **2.**      **Likelihood of Confusion is Presumed Where Goods are Counterfeit**

      Federal courts have traditionally applied an eight factor balancing test in order to
determine whether a defendant's infringement caused a likelihood of confusion.  *See, e.g.*, *AMF,
Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348-49 (9th Cir. 1979).  However, a summary judgment
motion in a counterfeiting case is readily granted because there is no question that there has been
a likelihood of confusion.  In other words, a counterfeiting case is of such a nature that it

"indicates a strong likelihood of confusion." *See, e.g.*, *Phillip Morris U.S.A. Inc. v. Shalabi*, 352 F. Supp. 2d 1067, 1073 (C.D. Cal. 2004). "In cases involving counterfeit marks, it is unnecessary to perform the step-by-step examination [of the factors] because counterfeit marks are inherently confusing." *Id.* "Multi-factored balancing is unnecessary in cases . . . where the defendant has misappropriated precise counterfeits of the plaintiff's trademarks on goods that compete with the trademark holder's own goods." *General Motors Corp. v. Autovation Technologies, Inc.*, 317 F. Supp. 2d 756, 761 (E.D. Mich. 2004). In counterfeiting cases, "a likelihood of confusion is presumed when a defendant intentionally copies a trademark design with the intent to derive a benefit from the reputation of another."[1]  *Id.*

While the Lanham Act's likelihood of confusion standard is predominantly factual in nature, the likelihood of confusion is presumed in a case where the defendant has manufactured, sold, or distributed counterfeit goods. *See, e.g.*,  *Gucci America, Inc. v. Duty Free Apparel*, 286 F. Supp. 2d 284, 287 (S.D.N.Y. 2003) ("counterfeits, by their very nature, cause confusion"); *Philip Morris U.S.A. Inc. v. Felizardo*, 2004 U.S. Dist. LEXIS 11154, *18 (S.D.N.Y. 2004) ("in cases involving counterfeit marks, it is unnecessary to perform the step-by-step examination of [the factors] because counterfeit marks are inherently confusing"); *General Motors Corp.*, 317 F.

---

[1] "The counterfeit merchandise is a duplicate for the genuine article.  Where a counterfeit item is virtually identical to the genuine item, the 'very purpose of the individuals marketing the cheaper [counterfeit] items is to confuse the buying public into believing that it is buying the true article.'"  *Fila U.S.A., Inc. v. Kim*, 884 F. Supp. 491, 494 (S.D. Fla. 1995).  Thus, in a counterfeiting case, the registered trademark holder need not prove intent to deceive in order to recover.  *See,. e.g.*, *Polo Fashions, Inc. v. Branded Apparel Merchandising, Inc.*, 592 F. Supp. 648, 650 (D. Mass. 1984). The rationale is that a defendant's use of a name or mark "cannot be justified by a claim of innocence, good faith, or lack of knowledge."  *See, e.g.*, *Polo Fashions, Inc. v. Clothes Encounters*, 1985 U.S. Dist. LEXIS 17838, 8, 227 U.S.P.Q. 327 (N.D. Ill. 1985). "Neither a finding of fraudulent intent, nor of bad faith . . . is required to establish liability for trademark infringement. . . . It is the objective fact of the infringement that is all important."  *Id.* at 7-8.

Supp. 2d at 761) ("a likelihood of confusion is presumed when a defendant intentionally copies a trademark design")[2].

The Lanham Act defines a "counterfeit" as "a spurious mark which is identical with, or substantially indistinguishable from, a registered mark." 15 U.S.C.A. §1127. As J. Thomas McCarthy instructs, "A 'counterfeit mark' is a false mark that is identical with, or substantially indistinguishable from, the genuine mark. Often, counterfeit merchandise is made so as to imitate a well-known product in all details of construction and appearance so as to deceive customers into thinking that they are getting genuine merchandise." J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition, 4th Ed. (2003).

The marks that appear on Defendants' products are substantially indistinguishable from the Coach Marks that appears on authentic Coach products.

| Defendants' Product (example) | Authentic Coach Product (Style # 12947) |
|---|---|
|  |  |

---

[2] In *General Motors Corporation v. Autovation Technologies, Inc.*, the defendant, who was neither affiliated with nor authorized by GM to use the GM trademarks, sold products and parts that were counterfeits of the GM trademarks, such as foot pedals and replacement pedals. *General Motors*, 317 F. Supp. 2d at 760. The court in the case stated that where a defendant has "misappropriated precise counterfeits of the plaintiff's trademarks on goods that compete with the trademark holder's own goods" the likelihood of confusion is presumed. *Id.*

Furthermore, the repetition of the Coach Designs on Defendants' Products is in such a manner as to mimic authentic Coach products. Thus, Defendants' products should be deemed counterfeit, and summary judgment on Coach's 15 U.S.C. § 1114 claim should be granted.

### 3. Defendants' Products Bear Marks Identical and/or Substantially Indistinguishable from the Coach Marks

Even if the goods were not considered "counterfeit," an analysis of the traditional factors would still warrant summary judgment in favor of Coach. Simply put, there is an undeniable likelihood of confusion between Coach's genuine products and Defendants' products.

Where there is a "virtual identity of marks" used with the same type of product, "likelihood of confusion would follow as a matter of course." *See, e.g.*, *Brookfield*, 174 F.3d at 1056; *see also Suarez Corp. Industries v. Earthwise Technologies, Inc.*, 2008 WL 4934055 (W.D. Wash., 2008) (maker of a space heater was entitled to summary judgment on a trademark infringement claim it brought against the maker of another heater where marks at issue were identical, and both manufacturers simultaneously sold related products marketed through the same retail method); *Nissan Motor Co. v. Nissan Computer Corp.*, 378 F.3d 1002, 1019 (9th Cir.2004) (affirming summary judgment where the marks were "legally identical," the goods at issue were related, and the marketing channels overlapped).

The eight factors to be considered under the traditional balancing test include the: 1) strength of the mark; 2) proximity or relatedness of the goods; 3) similarity of the marks; 4) evidence of actual confusion; 5) marketing channels used; 6) type of goods and the degree of care likely to be exercised by the purchaser; 7) defendant's intent in selecting the mark; and 8) likelihood of expansion of product lines. *See, e.g.*, *Downing v. Abercrombie & Fitch*, 265 F.3d 994, 1007 (9th Cir. 2001).

**(a)       Strength of the Coach Designs**

A strong trademark is distinctive in that the public is aware of the mark and associates that mark with a single business or source of supply.  Marks may be strengthened by extensive advertising, length of time in business, public recognition, and uniqueness.  *See, e.g.*, *Century 21 Real Estate Corp. v. Sandlin*, 846 F.2d 1175, 1179 (9th Cir. 1988).  A strong mark is "inherently distinctive" and is "afforded the widest ambit of protection from infringing uses."  *Sleekcraft* at 349.   Registered trademarks are "presumed to represent the source [of the goods or services] in the minds of the public."  *Gucci America, Inc. v. Action Activewear Inc*., 759 F. Supp. 1060, 1064 (S.D.N.Y. 1991).  Registered marks inherently possess a "secondary meaning," whereby the mark comes to identify "not only the goods but the source of those goods."  *Id.*

The Coach Designs have been in use for years, and are registered for a number of goods, which stands as proof of the strength of the mark and its validity.  By virtue of the wide renown acquired by the Coach Designs, coupled with their geographic distribution and the extensive sales of product under the Coach Designs, they have acquired secondary meaning in the mind of the purchasing public and have become famous.

**(b)       Relatedness of Goods**

Examples of "proximate" goods are those which complement one another, are sold to the same class of consumers, or are similar in use and function.  *See, e.g.*, *Saks & Co. v. Hill, d.b.a., Sacks Thrift Avenue*, 843 F. Supp. 620, 623 (S.D. Cal. 1993).  Both Coach and Defendants, in April 2010, were selling (to retail consumers) handbags and other accessories bearing marks identical and/or confusingly similar to the Coach Marks.  Thus, the goods are indeed "related" for purposes of determining likelihood of confusion.

14

**(c)      Similarity of Marks**

"Similarity of the marks is tested on three levels: sight, sound, and meaning." *Sleekcraft*,

599 F.2d at 351 (internal citation omitted).  "Each must be considered as they are encountered in

the marketplace." *Id.*.

As discussed above, the Defendants' marks appears on the Infringing Products in such a

way as to imitate the appearance of the Coach Designs on authentic Coach products.  A

consumer who sees a Coach handbag and Defendants' handbag will likely be confused.

**(d)      Evidence of Actual Confusion**

"The failure to prove instances of actual confusion is not dispositive against a trademark

plaintiff, because actual confusion is hard to prove;  difficulties in gathering evidence of actual

confusion make its absence generally unnoteworthy."  *Brookfield*, 174 F.3d at 1050.  Moreover,

Plaintiffs need not prove actual confusion in order to prevail on a motion for summary judgment

in a counterfeiting case.  *Polo Fashions, Inc.*, 592 F. Supp. at 651.  The counterfeiting of Coach

products undermines the reputation of the Coach trademarks and reduces the demand for genuine

Coach products.  Given the striking similarity between Defendants' goods and authentic Coach

goods, actual confusion among members of the public would be expected.

**(e)      Marketing Channels Used**

"Similarity of trade channels does not require sales of both parties' goods by identical

vendors, but only by the same type of distribution channels."  *E. & J. Gallo Winery*, 905 F. Supp.

at 1413.  D Clothing sells its products on a retail basis, to retail consumers.  Coach also sells its

products on a retail basis, to retail customers.  Thus, this factor weighs in favor of a finding of

likelihood of confusion between Defendants' and Coach's products.

15

**(f)      Degree of Purchaser Care**

In assessing likelihood of confusion, the standard used is the typical buyer exercising ordinary care, including "the ignorant, the unthinking and the credulous." *Fleischmann Distilling Corp. v. Maier Brewing Co.*, 314 F.2d 149, 156 (9th Cir. 1963).  The degree of purchaser care is indeed quite low in this situation where Defendants were selling handbags for prices relatively less expensive that that of authentic Coach merchandise.

**(g)      Defendants' Intent in Selecting the Mark**

Defendant was on constructive notice as to Coach's rights to the Coach Designs based upon its various trademark registrations to said mark.  15 U.S.C. §1065.  Due to the high degree of similarity between the marks which appear on Defendant's products and the Coach Designs, it is more than likely that selection of the infringing products was done with the intention of selling handbags which mimicked Coach's products.

**(h)      Likelihood of Expansion of Product Lines**

"A strong possibility that either party may expand his business to compete with the other will weigh in favor of finding that the present use is infringing." *Sleekcraft* at 354.  As discussed above, the products sold by Coach and Defendants are the same, and both sell on a retail basis.  Thus, there is already a conversion of product lines here that would warrant a finding of likelihood of confusion

After weighing all the above factors, there is no doubt that there is a likelihood of confusion between Defendants' goods and those of Coach.  Thus, summary judgment on the issue of liability should be granted in favor of Coach in this action.

### 4. Strict Liability for Violations of the Lanham Act

Ignorance is no defense to violations of the Lanham Act. 15 U.S.C. §1114; *Phillip Morris*, 352 F.Supp. 2d at 1073. Indeed, "sellers bear strict liability for violations of the Lanham Act". *See, e.g.*, *Henri's Food Products Co. v. Kraft Inc.*, 717 F.2d 352, 359 (9th Cir. 1983). "Notably, as in the copyright realm, international infringement may lead to enhanced statutory damages, but is not required to prove defendant's liability." *Taubman Co. v. Webfeats*, 319 F.3d 770, 775 (6th Cir. 2005). Thus, Defendants' intent is irrelevant to this motion which is limited to the issue of Defendants' liability. Since it is clear that the products sold by Defendants infringe upon Coach's famous Coach Designs, the only question that remains is the appropriate remedy.

### 5. Defendant Bajocka's Individual Liability

A corporate officer or director is, in general, personally liable for all torts which he authorizes or directs or in which he participates, notwithstanding that he acted as an agent of the corporation and not on his own behalf. *See, e.g.*, *A&M Records, Inc., et al. v. M.V.C. Distributing Corp., et al.*, 574 F.2d 312, 315 (6th Cir. 1985) ("It is well established that a corporate officer or agent is personally liable for torts committed by him even though he was acting for the benefit of the corporation. . . . Various courts have imposed personal liability on corporate officers involved in record piracy similar to that involved in the present case.") (internal citations omitted); *In re Interstate Agency, Inc.*, 760 F.2d 121, 125 (6th Cir. 1978) ("It is clear . . . that a corporate officer is personally liable for the tortuous injury committed by [him] regardless of a piercing of the corporate veil."). Specifically, an officer of a corporation can be personally liable for trademark infringement and unfair competition if the officer is a moving, active conscious force behind the defendant corporation's infringement. *See, e.g.*, *Bambu Sales, Inc. v. Sultana Crackers, Inc.*, 683 F.Supp. 899, 913-14 (E.D.N.Y.1988) (trademark

17

infringement); *Playboy Enterprises, Inc. v. Starware Publishing Corp.*, 900 F.Supp. 438, 441-42 (S.D.Fla.1995) (copyright infringement); *Babbit Electronics, Inc. v. Dynascan Corp.*, 828 F.Supp. 944 (S.D.Fla.1993), *aff'd* 38 F.3d 1161 (11th Cir.1994)  (holding "a corporate officer who directs, controls, ratifies, participates in, or is the moving force behind the infringing activity, is personally liable for such infringement without regard to piercing the corporate veil).

Defendant Dany Bajocka at all relevant times was the President and sole owner of "D Clothing" and/or D & N Clothing, Inc.; was in this store every day; and was one of two persons involved with ordering merchandise for sale at the store, the other being his own employee, "Rubin."  Displays at this store were updated as often as every week or ten days.  Mr. Bajocka knew and was involved in what was happening at his store with regard to the selling of counterfeit Coach products.  Moreover, all profit from such activity went to him.  Thus, Mr. Bajocka is personally liable for trademark infringement, as he was the active, moving, conscious force behind Defendants infringing activities.

IV.     **CONCLUSION**

Based on the foregoing, Plaintiffs Coach, Inc., and Coach Services, Inc., respectfully request that this Court grant summary judgment in favor of Plaintiff against Defendants, on the issue of liability for trademark infringement.  Plaintiffs furthermore ask for any other just and proper relief in the premises, including denial of Defendants' own summary judgment motion.

Respectfully submitted,

GONZALEZ SAGGIO & HARLAN, LLP
(Legal Counsel for Plaintiffs)

By:     /s/ *Alejandro Valle*
     One of Its Attorneys

18

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 20, 2011, a true and correct copy of this Motion and Brief was filed electronically.  Notice of this filing will be sent to the following by operation of the Court's CM/ECF system.

> Joseph A. Niskar
> Joseph A. Niskar, P.C.
> 535 Griswold, 2500 Buhl Building
> Detroit, MI 48226
> 313-963-6320
> niskarlaw@gmail.com

  <u>/s/ Alejandro Valle</u>
  Alejandro Valle

GONZALEZ SAGGIO & HARLAN, LLP
135 N. Pennsylvania Street, Suite 1740
Indianapolis, Indiana  46204
Telephone: (317) 686-9800
Facsimile: (317) 686-9821
Email: vallea@gshllp.com

**LEGAL COUNSEL FOR PLAINTIFFS**